IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| DENNIS WOODS BOWDEN, | § | |
| Petitioner, | § | |
| | § | 3:14-CV-4459-M |
| v. | § | 3:10-CR-0152-M |
| | § | |
| UNITED STATES OF AMERICA, | § | |
| Respondent. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b), as implemented by an order of the United States District Court for the Northern District of Texas. The Findings, Conclusions and Recommendation of the United States Magistrate Judge follow:

**I. Procedural Background**

Petitioner filed this petition for writ of habeas corpus pursuant to 28 U.S.C. § 2255. Petitioner challenges his convictions for three counts of securities fraud and four counts of mail fraud. The district court sentenced Petitioner to 192 months in prison. On September 30, 2013, the Fifth Circuit Court of Appeals affirmed his convictions and sentence. *United States v. Bowden*, 542 F. App'x 299 (5th Cir. 2013).

On December 18, 2014, Petitioner filed the instant § 2255 petition. He argues he received ineffective assistance of counsel when counsel:

(1)  failed to ask that the case be designated as a complex case, despite Petitioner's repeated requests for him to do so;

(2)  failed to adequately investigate and be familiar with the facts of the

Page 1

       case and the government's evidence, failed to adequately investigate evidence to support the defense of reliance on advice of counsel, and failed to adequately investigate evidence to support the defense of good faith;

(3) failed to apprise Petitioner as to the government's evidence against him prior to trial;

(4) failed to forward discovery to Petitioner or review discovery with Petitioner prior to trial;

(5) failed to interview government witnesses before trial;

(6) failed to interview available fact witnesses, including Phillip Offill, Jeffrey Bruteyn, Tamara Burleson, and Lisa Bowden, all of whom had material information and evidence relevant to Petitioner's defenses;

(7) failed to file any pre-trial motions, except trial continuance requests, and did not file a motion for discovery;

(8) failed to timely seek the services of a forensic accountant and obtain appropriate budget approval, resulting in the forensic accountant having insufficient time and funds to complete his review of the business associated with the charged offenses;

(9) failed to subpoena evidence from the Goodwin Pappas law firm that would have impeached government witnesses and supported Petitioner's defenses of good faith and reliance on advice of counsel; and

(10) failed to subpoena evidence from Attorney Phillip Offill that would have

>> impeached government witnesses and supported Petitioner's defenses of good
>>
>> faith and reliance on advice of counsel.

On December 9, 2015, Respondent filed its answer. On January 8, 2016, Petitioner filed a reply. The Court now finds the petition should be denied.

## II. Factual Background

The following factual background is taken from the Fifth Circuit's appellate decision.

Bowden owned American Eagle Acceptance Corp. (American Eagle), an automobile dealership specializing in the sale of used cars. Bowden desired to expand his business and endeavored to raise capital through the sale of short-term secured debt obligations (SDOs). Bowden used two companies, collectively known as AmeriFirst, to issue SDOs that promised an average return of seven and a half percent. Bowden enlisted the help of a long-time business associate, Jeffrey Bruteyn, to market the SDOs, which became popular with retirees searching for an equally safe, yet higher yielding alternative to traditionally low yielding certificates of deposit. Upon purchase, investors received the SDO itself and a Servicing Agreement (SA) that contained several fraudulent representations regarding the security of their investment. Three of the most prominent misrepresentations included statements that each SDO was (1) guaranteed by a commercial bank, (2) secured by certain collateral, and (3) insured against loss. A fourth statement mentioned the existence of a fiduciary relationship between the issuer of the SDOs and the investors. All of these representations were categorically false and they formed the basis of the charges against Bowden.

The financial condition of Bowden's companies began rapidly to deteriorate despite the large influx of capital from the initial issuance of SDOs. Bowden hired Dallas law firm Godwin Gruber and the firm's Securities Section chairman Phil Offill to create an entity to raise capital on behalf of American Eagle in a second wave of sales. Those sales never took place as Bowden's companies were placed into receivership once it became clear that Bowden had defrauded investors.

A grand jury returned an indictment charging Bowden with nine counts of securities fraud and nine counts of mail fraud. Although he had raised approximately fifty-eight million dollars through the SDO offerings, only eighteen million was secured by collateral as promised; the rest of the money was used to purchase apartments, condominiums, airplanes, and sports cars, usually in the name of the corporations. Other amounts were put in CDs and other low-yield investments. Despite Bowden's obvious mismanagement of investors' funds, the indictments against him were based solely upon the fraudulent representations in the SAs.

> After a trial, the jury returned a guilty verdict on four of the nine counts of securities fraud and five of the nine counts of mail fraud.

*United States v. Bowden*, 542 F. App'x 299, 300.

### III.  Discussion

To sustain a claim of ineffective assistance of counsel, Petitioner must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defense so gravely as to deprive Petitioner of a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In *Strickland*, the Court stated that "[j]udicial scrutiny of counsel's performance must be highly deferential" and "every effort [must] be made to eliminate the distorting effects of hindsight."  *Strickland*, 466 U.S. at 689.  Courts, therefore, must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id*.

Even if counsel is proven deficient, a petitioner must prove prejudice.  To prove such prejudice, Petitioner must show "a reasonable probability that the result of the proceedings would have been different but for counsel's unprofessional errors."  *Crane v. Johnson*, 178 F.3d 309, 312 (5th Cir. 1999) (citing *Strickland*, 466 U.S. at 694).  "[T]he mere possibility of a different outcome is not sufficient to prevail on the prejudice prong."  *Id*.  "Rather, the defendant must demonstrate that the prejudice rendered sentencing 'fundamentally unfair or unreliable.'"  *Id*. (quoting *Lockhart v. Fretwell*, 506 U.S. 364, 369 (1993)).

#### A.   Complex Case Designation

Petitioner claims his counsel failed to have this case designated as complex, which resulted in less money being available to pay his forensic expert.  This claim is without merit.  The record shows counsel filed a motion for additional funds to hire a forensic accounting expert.

(ECF No. 24.) The district court granted Petitioner's motion to hire an accounting expert. (ECF No. 25.) The district court requested advanced approval from the Fifth Circuit for expert funds above the statutory maximum amount contained in the CJA Act, 18 U.S.C. § 3006A(e)(3). (ECF No. 41.) The Fifth Circuit approved funds exceeding the statutory maximum amount. (ECF No. 42.) Petitioner has failed to show his counsel was ineffective for failing to have the case designated as complex, or failing to obtain adequate funding for a forensic expert. He has also failed to establish that had additional expert funds been available, this would have resulted in favorable evidence for the defense.

**(B)    Forensic Accountant**

Petitioner claims his counsel failed to timely seek the services of a forensic expert and timely seek budget approval to hire an expert. He claims this failure caused the expert to have insufficient time and funds to adequately review the records. He claims that with sufficient time and funds, his expert would have testified that Petitioner's companies were solvent and profitable, and that Petitioner would have had sufficient funds to repay investors. Petitioner states this would have established his good faith defense.

At trial, defense expert Terry McGee testified that he was limited in the amount of time he was given to review the evidence. (Trial Tr. Vol. 6 at 27.) He spent about 120 hours reviewing the evidence, which he stated was insufficient. (*Id*.) He also stated he had exceeded the amount of money budgeted for his fees and expenses. (*Id*. at 38.)

Petitioner, however, has failed to submit any evidence that a further review of the evidence would have established that Petitioner's businesses were viable or profitable. Petitioner's claim is conclusory and should be denied. *See Ross v. Estelle*, 694 F.2d 1008,

1012 (5th Cir. 1983) (emphasizing that mere conclusory allegations do not raise constitutional issues in habeas proceedings).

**(C)     Conclusory Claims**

Petitioner claims his counsel was ineffective when counsel failed to file pretrial motions, apprise Petitioner of the government's evidence, forward discovery to Petitioner, present any meaningful argument for acquittal, and subpoena evidence. Petitioner, however, has failed to specify what pretrial motions his counsel should have filed and how those motions would have affected the case. He fails to specify what arguments his counsel should have made in support of his motion for acquittal. Further, he has failed to specify how it would have changed the outcome of the trial if his counsel would have forwarded discovery to him or apprised him of the government's evidence. Finally, he fails to state what evidence his counsel should have subpoenaed and how it would have helped the defense. These claims are conclusory. Petitioner has failed to show that but for his counsel's alleged deficiencies, there is a reasonable probability that he would not have been convicted. *See Crane*, 178 F.3d at 312.

**(D)     Use Available Evidence**

Petitioner claims counsel was ineffective for failing to use available evidence to cross-examine the government's witnesses. He states the government's exhibits could have been used to support Petitioner's claim that he acted in good faith, and that he relied on the advice of counsel. He also claims the documents could have been used to impeach the government's witnesses.

Petitioner cites the testimony of Jeffrey McPhaul, ("McPhaul") who was an associate at the Godwin Pappas Law Firm. Petitioner states McPhaul testified he did not know if the

offering documents used by AmeriFirst Funding prior to Offill being retained had ever been received or reviewed by Offill. Petitioner, claims however, that an email between McPhaul and Offill showed that Offill and McPhaul had seen the offering documents for AmeriFirst Funding and that McPhaul had asked specific questions about the documents.

The record shows McPhaul testified that Offill received documents from Bruteyn and Petitioner at the time Offill was retained. McPhaul stated the documents did not look like offering documents, but looked like someone who "didn't know anything about securities law put it together." (Trial Tr. Vol. 3 at 211.) The government showed McPhaul a copy of the AmeriFirst Funding Collateral Secured Debt Obligation and asked McPhaul if it looked familiar. McPhaul stated he could not remember. The government also showed McPhaul the AmeriFirst Funding Serving Agreement and asked if that looked familiar. McPhaul stated it could have been part of the documents he reviewed at the time, but he could not remember. (*Id*. at 211-212.) Further, McPhaul testified he did not know that Bruteyn and Petitioner had been using the documents that they sent to Offill. Instead, he thought the documents were "their first shot at, you know, trying to do what they were asking us to prepare for them." (*Id*. at 214.) McPhaul testified he used the documents to check the spellings of names, obtain basic information on the principals, and for guidance to determine what Petitioner and Bruteyn wanted his firm to create. (*Id*. at 213.) The email Petitioner attaches is consistent with McPhaul's testimony that he reviewed the documents provided by Petitioner and Bruteyn and that the documents were deficient. McPhaul stated, "[T]here wasn't any chance that any of those documents would have found their way into what we were preparing." (*Id*.) This evidence did not support Petitioner's good faith or reliance on counsel arguments.

Petitioner also claims evidence showed Offill was aware of these AmeriFirst Funding documents because Offill used the documents to respond to the Texas State Securities Board and others. Offill testified in a related civil case, *Reneker v. Offill*, No. 3:08-CV-1394-D (N.D. Tex.), however, that when he received the inquiry from the Texas Securities Board, he then asked Petitioner and Bruteyn for a copy the documents they had used, and he sent those documents to the Texas State Board. (Pet. Ex.Gl00 at 94-95.) Offill testified he did not know if the documents that Petitioner and Bruteyn provided for the Texas Securities Board were the same documents that they provided to him when they retained him in 2005. (*Id*.) Offill stated he did not know what materials Petitioner and Bruteyn used to raise money for AmeriFirst Funding. (*Id*. at 95-96.) This evidence did not support Petitioner's good faith or reliance on counsel arguments.

Petitioner also states McPhaul testified that after the formation of AmeriFirst Acceptance and after he emailed the offering documents to Bruteyn on March 17, 2006, he had no evidence that AmeriFirst Acceptance had made a sale prior to the date the receiver was appointed. Petitioner claims, however, that the government's own exhibits, not introduced at trial, reflected a minimum of three filings of exemptions and notices of sale on behalf of Acceptance filed with the Texas State Securities Board, reflecting that sales were made by Acceptance, and that Offill was aware of those sales.

The documents submitted by Petitioner showed that Offill filed notices of sale with the State, but he submits no evidence that AmeriFirst Acceptance ever made sales with the documents created by Offill and McPhaul, or that Offill or McPhaul knew Petitioner or Bruteyn were continuing to make sales using the AmeriFirst Funding documents. Offill

testified that he filed the exemptions and notices of sales with the Texas Securities Board, but he "never found out that they actually made any sales." (*Id*. at 93.) Petitioner has failed to establish he received ineffective assistance of counsel when counsel failed to introduce these documents.

### (E)   Good Faith Reliance

Petitioner claims his counsel was ineffective because counsel failed to sufficiently develop evidence of Petitioner's good faith reliance on attorney Offill's advice by interviewing certain witnesses or calling them to testify.

#### (1)   Offill

Petitioner claims his counsel was ineffective because he failed to interview Offill and failed to call him as a witness at trial. Petitioner claims Offill's testimony would have been exculpatory.

Petitioner admits that defense counsel had access to Offill's deposition testimony from the *Reneker* case. (Pet. Mem. at 29 n.19.) Petitioner cites this testimony to argue that: (1) Offill was generally aware of the SDOs in late 2005; (2) Petitioner delegated the function of dealing with the lawyers to Bruteyn; (3) Offill was told at the time he entered into the agreement to represent AmeriFirst Acceptance that AmeriFirst Funding had been raising money with the SDOs; (4) Offill told Petitioner and Bruteyn the documents for the AmeriFirst Funding SDOs were not good, but Offill did not recall "getting specific with them;" (5) Offill saw the AmeriFirst Funding documents again in 2006 when he represented them before the Texas State Securities Board, and (6) Offill never told Petitioner or Bruteyn that the AmeriFirst Funding documents were not in compliance.

A review of Offill's deposition testimony shows defense counsel was not ineffective for failing to interview or call Offill as a witness. Offill testified he knew in a general sense that Petitioner and Bruteyn had raised money for AmeriFirst Funding prior to meeting with him in late 2005. (Pet. Ex. G1oo at 69.) He states Petitioner and Bruteyn produced documents to help him understand their business, but he did not know whether these were the documents that AmeriFirst Funding used to raise money. (*Id*. at 94.) Offill testified he and his company did not work on the AmeriFirst Funding documents. (*Id*. at 85.)

Offill testified that when Petitioner and Bruteyn met with him in late 2005, he believed they had raised money for AmeriFirst Funding in the past, but that they were not currently raising money for AmeriFirst Funding. (*Id*. at 209.) He stated that if he knew Petitioner and Bruteyn were using the AmeriFirst Funding documents to raise money he would have told them to stop. (*Id*. at 207.) Offill testified that although Petitioner wanted to use the AmeriFirst Funding documents to continue to raise money, Offill told him those documents were not good and that they failed to make required disclosures. (*Id*. at 212.) This testimony would have directly undermined Petitioner's good faith and reliance on counsel defenses.

(2) Bruteyn

Petitioner claims his counsel was ineffective for failing to interview or call Jeffrey Bruteyn as a witness at trial. Petitioner states Bruteyn submitted an affidavit in the *Reneker* case in which he stated Offill assured him and Petitioner that the AmeriFirst Funding documents were okay to use, that Offill never advised them to stop using the documents, and that Offill assured them they had done nothing wrong. (Pet. Mem. at 37-38.)

At the time of Petitioner's trial, however, Bruteyn had been convicted of nine counts of

securities fraud related to this case, and his appeal was pending before the Fifth Circuit. *See United States v. Bruteyn*, 3:09-CR-136-M (N.D. Tex.). Petitioner has submitted no evidence that Bruteyn would have been willing to testify at trial, and would not have invoked his Fifth Amendment rights. *See Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985) ("[F]or the appellant to demonstrate the requisite *Strickland* prejudice, the appellant must show not only that this testimony would have been favorable, but also that the witness would have testified at trial."). Further, it was reasonable trial strategy not to call Bruteyn who had been convicted of securities fraud related to this case. *See Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992) (stating a petitioner must overcome the strong presumption that the challenged conduct was the product of reasoned trial strategy).

    (3)    <u>Tamara Burleson and Lisa Bowden</u>

Petitioner claims his counsel was ineffective for failing to interview and call Tamara Burleson and Lisa Bowden as witnesses at trial.

Burleson was Bruteyn's administrative assistant, and they also had a dating relationship. (Pet. Ex. G1h at 14.) Burleson submitted an affidavit in the *Renkeker* case in which she stated she attended some meetings with Bruteyn and Offill, and she never heard Offill suggest that the manner in which the notes were being sold was improper. (Pet. Ex. G1g.) She also stated she once heard Offill tell Bruteyn the AmeriFirst Funding documents "passed muster," and that Offill gave the impression the notes were being sold properly. (*Id*.) Burleson also testified, however, that she could not remember the specific meeting in which Offill told Bruteyn the documents passed muster. (Pet. Ex. G1h at 57.)

Lisa Bowden was Petitioner's sister. She submitted an affidavit in the *Reneker* case in

which she stated Petitioner expressed confidence in the advice provided by Offill. (Pet. Ex. G1i.) Lisa Bowden also stated that after the SEC took control of the business, she met with Offill, Petitioner and others and Offill assured them the charges were "no big deal, and that nothing criminal had occurred." (*Id*.)

Lisa Bowden's affidavit failed to describe what relevant advice Offill provided and the specifics of the advice. Her affidavit also failed to show that prior to the SEC Receivership, Offill advised Petitioner or Bruteyn that the AmeriFirst Funding documents were sufficient. Further, Petitioner has failed to show that but for his counsel's failure to interview or call these witnesses at trial there is a reasonable probability that the result of the trial would have been different.

(4)   D. Ronald Reneker

Petitioner claims his counsel was ineffective for failing to call Receiver D. Ronald Reneker to testify. Prior to Petitioner's trial, Receiver Reneker filed suit against Offill and Godwin Pappas in the *Reneker* case. In the original complaint in that case, Receiver Reneker alleged that Petitioner had committed fraud. In an amended complaint, he removed the fraud allegation against Petitioner and stated that Offill's advice to Petitioner was defective. (Pet. Mem. at 35.)

In a pre-trial hearing, defense counsel requested permission to admit evidence regarding the *Reneker* case. (Trial Tr. Vol. 1 at 7 -11.) Defense counsel stated he also intended to call Reneker as a witness. (*Id.*) In response, the government argued that Reneker was not a fact witness and was an improper expert witness. (*Id.*) The government argued Reneker's testimony was hearsay and would require the government to introduce extensive evidence

involving the *Reneker* case. (*Id*. at 9.) The Court stated it was disinclined to allow Reneker's testimony, but stated that Petitioner could bring Reneker to Court to develop the record of his proposed testimony. (*Id*. at 10.) Petitioner claims that defense counsel was ineffective for failing to call Reneker to provide this testimony. Petitioner, however, has submitted no evidence that Reneker was available and willing to testify at trial and that his testimony would have been favorable to the defense. *See Alexander*, 775 F.2d at 602 (stating that to establish the requisite *Strickland* prejudice, Petitioner must show that the testimony would have been favorable); *see also See Martin v. McCotter*, 796 F.2d 813, 819 (5th Cir. 1986) ("hypothetical or theoretical testimony will not justify the issuance of a writ"). Further, Reneker could not have testified as to whether Petitioner acted in good faith, since whether Petitioner acted with the required mental state was an issue for the jury.

     Defense counsel also argued in the pre-trial hearing that because Reneker was appointed by the government as a Receiver, he was an agent of the government and his findings would bind the government in Petitioner's criminal case. (Trial Tr. Vol. 1 at 11.) The Court stated that defense counsel could provide the Court with case law on the issue. Petitioner complains that his counsel never pursued this claim. Petitioner, however, has failed to submit any authority for the proposition that the Receiver's allegations in the civil complaint would bind the government in Petitioner's criminal case. Petitioner has failed to establish ineffective assistance of counsel.

## IV. Recommendation

For the foregoing reasons, the Court recommends that the motion to correct, vacate or set-aside sentence pursuant to 28 U.S.C. § 2255 be denied.

Signed this 13th day of April, 2016.

_____
PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

**INSTRUCTIONS FOR SERVICE AND**
**NOTICE OF RIGHT TO APPEAL/OBJECT**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).